# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 18-634V
Filed: November 29, 2023

| | |
|---|---|
| * * * * * * * * * * * * * * | |
| ALIA J. STONE, | * |
| | * |
| Petitioner, | * |
| v. | * |
| | * |
| SECRETARY OF HEALTH | * |
| AND HUMAN SERVICES, | * |
| | * |
| Respondent. | * |
| * * * * * * * * * * * * * * | |

*Nancy Routh Meyers, Esq.*, Turning Point Litigation, Greensboro, NC, for petitioner.
*Mary Eileen Holmes, Esq.*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Roth**, Special Master:

On May 3, 2018, Alia Stone ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq*.,[2] (the "Vaccine Act" or "Vaccine Program"). Petitioner alleges she developed acute disseminated encephalomyelitis ("ADEM") after receiving meningococcal and Hepatitis B ("Hep B") vaccines on May 13, 2016. Petition, ECF No. 1. On January 29, 2021, a decision dismissing the case was issued because petitioner failed to show that she suffered residual effects of her alleged ADEM for more than six months after vaccination. ECF No. 47.

---

[1] Because this decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned finds that the identified material fits within this definition, such material will be redacted from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (1986). Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

1

On February 19, 2021, petitioner filed a Motion for Attorneys' Fees and Costs pursuant to Section 15(e) of the Vaccine Act. ECF No. 48 ("Motion for Fees"). Respondent filed a response opposing the motion and raising reasonable basis on March 4, 2021. ECF No. 50 ("Response"). On March 18, 2021, petitioner filed additional medical records and her Reply, maintaining that objective evidence in the record supports reasonable basis. Petitioner's Exhibit ("Pet. Ex.") 16, ECF No. 53; ECF No. 54 ("Reply").

On March 11, 2022, petitioner filed a supplemental motion for fees, which included documentation for fees and costs associated with the Reply to respondent's reasonable basis objection. ECF No. 55 ("Supplemental Motion"). Respondent filed his response on March 22, 2022, restating his objection as to reasonable basis. ECF No. 56 ("Response to Supplemental Motion"). Petitioner did not file a reply.

Petitioner seeks a total of **$36,805.06**, representing $35,520.00 in attorneys' fees and $1,285.06 in costs. *See* Supplemental Motion at 1. After careful consideration, petitioner's Motion for Attorneys' Fees and Costs is **GRANTED in part** for the reasons set forth below.

## I. Background

### A. Procedural History

Petitioner filed her petition and medical records on May 3, 2018. Pet. Ex. 1-4, ECF No. 1. She filed a statement of completion on May 21, 2018. ECF No. 7.

Respondent filed a status report on February 13, 2019, requesting additional medical records be filed. ECF No. 15. Petitioner filed the additional records on April 11 and June 11, 2019. Pet. Ex. 5-6, ECF Nos. 17, 19.

On December 12, 2019, respondent filed his Rule 4(c) Report, stating that petitioner had not demonstrated that she suffered from residual effects of her ADEM for more than six months. ECF No. 26. Petitioner was ordered to submit any and all evidence that demonstrated her alleged vaccine injury persisted in excess of six months. ECF No. 27.

On February 3, 2020, petitioner filed the additional records in support of the six months severity requirement. Pet. Ex. 7, ECF No. 28. Respondent advised on April 10, 2020 that he was not willing to engage in settlement discussions. ECF No. 32. Petitioner was ordered to submit additional evidence in support of the six months severity requirement. ECF No. 33.

Petitioner filed five affidavits on June 23, 2020, and two affidavits on June 29, 2020. Pet. Ex. 8-12, ECF Nos. 35, 37; Pet. Ex. 13-14, ECF No. 38.

A status conference was held on October 1, 2020 to discuss the status of the case. Discussed were the medical records that confirmed resolution of petitioner's ADEM within three months of the vaccination. Pet. Ex. 1 at 38-41. Also discussed was respondent's position that, in addition to the resolution of petitioner's ADEM prior to the six months post vaccination, the evidence in the record failed to link her claim of exacerbation of migraines to the vaccine because the medical

2

records showed petitioner had a history of migraines prior to vaccination and her doctor attributed her headaches following the vaccination to poor sleep and anxiety. Pet. Ex. 4 at 52. Also discussed was a statement filed from petitioner's primary care provider ("PCP") Dr. Grund that petitioner's recovery took over a year. Pet. Ex. 7. Further discussed were the inconsistencies between the statements made in the various affidavits filed by petitioner and her medical records. Petitioner affirmed that she struggled through classes, suffered from headaches and fatigue with mental fog and difficulty retaining material, and that her professors made special accommodations due to her absences from class and needing more time to complete classwork and tests. Pet. Ex. 12 at 4. She further affirmed being given reduced hours at work and tasks with frequent breaks to accommodate her headaches. *Id*. at 3. An Order issued for petitioner to file, among other things, her transcript from nursing school and payroll ledger from her employer for the three years she worked there to confirm her affirmations. ECF No. 43.

In response to the Court's Order for her school and work records to be filed to support her affirmations, petitioner filed a statement that she believed the records already filed demonstrated that she had suffered for over six months from her injury, but she had "no other choice but to ask [her] attorney to dismiss [her] case." Pet. Ex. 15, ECF No. 44. On January 28, 2021, petitioner filed a motion to dismiss her case. ECF No. 46. The claim was dismissed the following day for failure to support the six months requirement. ECF No. 47.

On February 19, 2021, petitioner filed a Motion for Attorneys' Fees and Costs. Motion for Fees, ECF No. 48. Respondent filed a Response, objecting to reasonable basis, on March 4, 2021. Response, ECF No. 50. On March 18, 2021, petitioner filed additional medical records and her Reply. Pet. Ex. 16, ECF No. 53; Reply, ECF No. 54.

On March 11, 2022, petitioner filed a supplemental motion for fees, which included a request for fees and costs associated with the Reply to respondent's reasonable basis objection. Supplemental Motion, ECF No. 55. Respondent filed his response on March 22, 2022, restating his objection as to reasonable basis. Response to Supplemental Motion, ECF No. 56. Petitioner did not file a reply.

This matter is now ripe for consideration.

**B. Summary of Relevant Medical Records**

Petitioner had a past medical history of migraines, frequent viral upper respiratory infections, joint hypermobility, mild endocrine abnormalities, and recurrent cystitis and urinary tract infections ("UTIs"), among other conditions. Pet. Ex. 3 at 78-83; Pet. Ex. 1 at 1-11.

Petitioner received the Hepatitis B and meningococcal conjugate vaccines on May 13, 2016, as a requirement for nursing school. Pet. Ex. 2 at 11, 14. Eight days later, she presented to the clinic with fever, chills, night sweats, body fatigue, vomiting and nausea believed to be the flu. She was prescribed Tamiflu, although a rapid flu test was negative. Pet. Ex. 5 at 2-3, 5.

On May 22, 2016, petitioner was seen at the OSU Medical Center emergency room for painful urination and fever. Pet. Ex. 3 at 3. She had an onset of supra-pubic fullness and dysuria three days prior. Petitioner reported that her current symptoms felt like her prior UTIs. *Id*. at 4.

Petitioner was diagnosed with a bladder infection and pyelonephritis, treated with oral antibiotics, and discharged with instructions to follow-up. *Id*. at 6.

On May 23, 2016, petitioner had a urology consultation. She reported recurrent urinary tract infections for the previous nine years. Pet. Ex. 3 at 10, 12. She reported tattoo removal 5 days prior and orange urine for two weeks. *Id.* 8, 12. The impression was recurrent UTIs. *Id*. at 12. She was prescribed Keflex. *Id*. at 12, 57-58. A CT and urine culture were normal, and a viral infection was suspected. She refused admission. *Id*. at 57-58.

On May 28, 2016, petitioner presented to the emergency room with chills, headache, and vomiting. Pet. Ex. 3 at 69-70, 78. A note was made of the vaccinations three weeks prior and a trip to Texas two weeks ago. *Id*. at 87. Petitioner reported headaches since she was 15 years old, but this was different from her typical migraines, as it was more severe and generalized. *Id*. at 70. She was photophobic and phonophobic, with blurry vision and generalized weakness. She had neck pain and stiffness and was lightheaded, dizzy, and unsteady on her feet. *Id*. Neurologic examination was normal. *Id*. at 71, 73. A lumbar puncture showed elevated white blood cell count and was consistent with viral or aseptic meningitis. *Id*. at 78-80, 156-57. The attending neurologist noted that "[i]t is unclear if [her condition] could have been partially caused by recent immunizations." *Id*. at 112; *see also* Pet. Ex. 1 at 15. Petitioner was admitted to OSU Medical Center for further evaluation and treatment of her symptoms. Pet. Ex. 3 at 69-73, 79-80.

Petitioner was discharged on June 6, 2016. The discharge summary included that petitioner became ill with nausea, vomiting, and diarrhea two weeks prior to admission. She reported receiving meningitis and Hepatitis B vaccines around the time her symptoms started. The symptoms persisted into the next week when she developed a fever and urinary retention. She was diagnosed with a UTI and started on Keflex. On May 25, 2016, she developed an itchy rash, possibly from Keflex. On May 28, 2016, she developed a severe generalized headache associated with blurry vision, vertigo, photo/phonophobia, vomiting, neck pain, and stiffness. She was walking with an ataxic gait when she presented to OSU Medical Center and was admitted. Her CSF was abnormal, and she was started on acyclovir and ceftriaxone for possible viral or bacterial meningitis, as well as dexamethasone. Pet. Ex. 3 at 78-85. The brain MRI was abnormal, showing diffuse inflammatory lesions in the midbrain, cerebellum, thalami, and white matter. *Id*. at 79-81. Petitioner had symmetrical enhancement in the cranial nerves II, V, VII & VIII. The spinal cord MRI showed a short segment signal abnormality from C5-C7 with no enhancement. *Id*. The brain MRI findings indicated a demyelinating process like ADEM. *Id*. at 115-16. It was noted that the "[t]emporal relationship of vaccines to onset of symptoms (Pt received Hep B and gonococcal meningitis vaccines shortly before symptoms began) favors ADEM". *Id*. at 137. There was extensive testing for viral, bacterial, and fungal etiologies, and no organism was identified. *Id*. at 79. Petitioner was treated with high dose IV Solu-Medrol for presumed ADEM. Her urinary retention ceased and was thought to be possibly neurogenic. At the time of discharge, petitioner was comfortable with no nuchal rigidity. She was diffusely hyper-reflexic but had no clonus and was ambulatory. *Id*. at 79-80.

After discharge, petitioner was seen by a neurologist on August 5, 2016. Pet. Ex. 1 at 37; Pet. Ex. 3 at 571-72. At that time, she reported no further symptoms. Pet. Ex. 1 at 37. She was walking without difficulty and not dropping things. She denied weakness. She had no vertigo or

diplopia, and no more bladder difficulty. Petitioner was having continued headaches 2-3 times a week, with pain up to 7/10 in severity. *Id*. She had a family history of migraines. *Id*. at 37-38. The physical examination including the neurologic examination was normal. *Id*. at 40. The impression was resolution of ADEM symptoms of ataxia and vertigo, as well as continued headaches, which sounded like migraines. *Id*. at 41. She was treated with nortriptyline for migraine prophylaxis, and Maxalt for acute symptoms. *Id*. at 37-44; Pet. Ex. 3 at 571-72.

Follow-up MRIs of petitioner's brain and spinal cord on December 29, 2016 revealed resolution of the previous abnormalities. Pet. Ex. 4 at 7-8.

The neurologist wrote a letter to petitioner's PCP, recommending that petitioner not receive the Tdap vaccine for at least a year following her hospitalization. Pet. Ex. 4 at 31.

Petitioner was not seen again until June 8, 2017. She reported no neurologic symptoms since the original diagnosis of ADEM, but she continued to have migraines with photophobia, phonophobia, and blurry vision. She was occasionally getting panic attacks, more commonly in stressful times. The neurologist noted that her headaches were likely worsened by poor sleep and anxiety. Pet. Ex. 4 at 48-52.

Petitioner's next medical visit was on November 17, 2017. She had no symptoms of focal disease from ADEM. Pet. Ex. 4 at 76. She continued to have migraines roughly three times a week, and a bad headache once every two weeks. *Id*. The attending neurologist noted full recovery from the ADEM and "[p]ost-infectious ADEM due to a flu-like illness and possibly her prior vaccination is most likely." *Id*. at 81. She was told to continue taking nortriptyline and Maxalt. *Id*.

Petitioner went to the emergency room on February 15, 2018 for dizziness, headache, and blurry vision, typical of the migraines she has had since her ADEM diagnosis in 2016. Pet. Ex. 6 at 55-56. The attending physician noted that petitioner has had migraine and vertigo since being diagnosed with ADEM. *Id*.

Petitioner had an evaluation for Ehlers-Danlos syndrome (hypermobility) with a rheumatologist on August 17, 2018, during which she reported chronic fatigue due to reactivation of mononucleosis and recent ADEM. Pet. Ex. 6 at 10. She also reported a history of hypermobility and dizzy spells since she was a child. She had 15 shoulder dislocations since high school from routine activities like carrying serving trays and waiting tables. *Id*. It was also noted that she could voluntarily dislocate her hips and thumbs and hyperextend her elbows and shoulders. She had a tilt table test in the past that was normal. She also complained of insomnia that impaired her daily function. *Id*. The rheumatologist noted that petitioner's mother had similar symptoms of joint hypermobility, thin skin, and early osteoporosis. *Id*. The examination was normal. *Id*. at 13. The assessment was joint hypermobility syndrome; she was to begin physical therapy and follow-up in six months. *Id*. at 11.

### C. Statement from Petitioner's Primary Care Physician

Dr. Bruce Grund submitted a statement on petitioner's behalf on January 20, 2020. Pet. Ex. 7. He summarized her medical history following vaccination. He wrote that she had "substantial improvement" and was able to return to nursing school, but her recovery period lasted

approximately one year. *Id*. at 2. He stated that she was still somewhat symptomatic when he saw her on June 18, 2019. In Dr. Grund's opinion, petitioner's migraines were exacerbated by the meningitis. *Id*. Attached to his letter, Dr. Grund submitted petitioner's active problem list from his office's medical records, which included (among other things): migraine, noted on June 18, 2019; autoimmune encephalomyelitis, noted on June 3, 2016; aseptic meningitis due to drug, noted on June 1, 2016; and meningitis, noted on May 29, 2016. It was also noted that petitioner was allergic to Menactra (meningococcal) vaccine, and the listed reaction was meningitis from the vaccine. *Id*. at 3.

## II. Discussion

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petition results in compensation, petitioner is entitled to reasonable attorneys' fees and costs. *Id.*; *see Sebelius v. Cloer*, 569 U.S. 369, 373 (2013). Where a petitioner does not prevail on entitlement, a special master has discretion to award reasonable fees if the petition was brought in "good faith" and with a "reasonable basis" for the claim to proceed. § 15(e)(1). A petitioner's good faith is presumed "in the absence of direct evidence of bad faith." *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996). Where no evidence of bad faith exists and respondent does not challenge petitioner's good faith, good faith requires no further analysis. In the instant case, the undersigned has no reason to believe, and respondent does not argue, that petitioner did not bring her claim in good faith. Therefore, the undersigned finds that petitioner brought her claim in good faith.

### A. Reasonable Basis

#### 1. Legal Standard

In discussing the reasonable basis requirement, the Federal Circuit stressed the prima facie petition requirements of § 11(c)(1) of the Act. *Cottingham ex. rel. K.C. v. Sec'y of Health & Human Servs.*, 971 F.3d 1337, 1345-46 (Fed. Cir. 2020). Specifically, the petition must be accompanied by an affidavit and supporting documentation showing that the petitioner:

> (1) received a vaccine listed on the Vaccine Injury Table;
> (2) received the vaccination in the United States, or under certain stated circumstances outside of the United States;
> (3) sustained (or had significantly aggravated) an injury as set forth in the Vaccine Injury Table (42 C.F.R. § 100.3(e)) or that was caused by the vaccine;
> (4) experienced the residual effects of the injury for more than six months, died, or required an in-patient hospitalization with surgical intervention; and
> (5) has not previously collected an award or settlement of a civil action for damages for the same injury.

*Cottingham*, 971 F.3d at 1345-46.

Reasonable basis is an objective inquiry, irrespective of counsel's conduct or a looming statute of limitations, that evaluates the sufficiency of records available at the time a claim is filed.

6

*Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017); *see Turpin v. Sec'y of Health & Human Servs.*, No. 99-564, 2005 WL 1026714 at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005). A special master's evaluation of reasonable basis focuses on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient objective evidence to make a feasible claim for recovery. *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121 at *7 (Fed. Cl. 2018).

Reasonable basis is satisfied when there is more than a mere scintilla of objective evidence, such as medical records or medical opinions, supporting a feasible claim before filing. *See Cottingham*, 971 F.3d at 1346; *see Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 286 (2014) (citing *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 303, 303 (2011)); *see Silva v. Sec'y of Health & Human Servs.*, 108 Fed. Cl. 401, 405 (2012). A recent attempt to clarify what quantifies a "scintilla" looked to the Fourth Circuit, which characterized "more than a mere scintilla of evidence" as "'evidence beyond speculation that provides a sufficient basis for a reasonable inference of causation.'" *Cottingham v. Sec'y of Health & Human Servs.*, 154 Fed. Cl. 790, 795 (2021) (*quoting Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 765 (4th Cir. 2021)). Additionally, absence of an express medical opinion of causation is not necessarily dispositive of whether a claim has a reasonable basis. Medical records may support causation even where the records provide only circumstantial evidence of causation. *James-Cornelius on Behalf of E.J. v. Sec'y of Health & Human Servs.*, 984 F.3d 1374, 1379-80 (Fed. Cir. 2021).

Evaluation of reasonable basis is limited to the objective evidence submitted. *Simmons*, 875 F.3d at 636. Still, a special master is not precluded from considering objective factors such as "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018). In *Cottingham*, the Federal Circuit expressly clarified that special masters are permitted to utilize a totality of the circumstances inquiry in evaluating reasonable basis, including, but not exclusively limited to, objective factors such as those identified in *Amankwaa*. *See Cottingham*, 971 F.3d at 1344. The Federal Circuit reiterated that counsel's conduct is subjective evidence not to be considered when evaluating reasonable basis. *Id*. at 1345. Counsel's attempt or desire to obtain additional records before filing is subjective evidence and does not negate the objective sufficiency of evidence presented in support of a claim. *James-Cornelius*, 984 F.3d at 1381. The Federal Circuit has additionally articulated that special masters cannot broadly categorize all petitioner affidavits as subjective evidence or altogether refuse to consider petitioner's sworn statements in evaluating reasonable basis. *Id.* at 1380 (holding that factual testimony, when corroborated by medical records and a package insert, can amount to relevant objective evidence for supporting causation). However, a petitioner's own statements cannot alone support reasonable basis, and special masters may make factual determinations as to the weight of evidence. *See, e.g.*, *Chuisano*, 116 Fed. Cl. at 291; *Foster v. Sec'y of Health & Human Servs.*, No. 16-1714V, 2018 WL 774090, at *3 (Fed. Cl. Spec. Mstr. Jan. 2, 2018); *Cottingham*, 971 F.3d at 1347.

While absent or incomplete records do not strictly prohibit a finding of reasonable basis, an overwhelming lack of objective evidence will not support reasonable basis. *Chuisano*, 116 Fed. Cl. at 288; *see Simmons*, 875 F.3d at 634-36 (holding that reasonable basis was not satisfied where 1) petitioner's medical record lacked proof of vaccination and diagnosis and 2) petitioner

disappeared for two years before filing a claim). The objective evidence in the record must also not be so contrary that a feasible claim is not possible. *Cottingham*, 154 Fed. Cl. at 795, citing *Randall v. Sec'y of Health & Human Servs.*, No. 18-448V, 2020 WL 7491210, at *12 (Fed. Cl. Spec. Mstr. Nov. 24, 2020) (finding no reasonable basis when petitioner alleged a SIRVA injury in his left arm though the medical records indicated that the vaccine was administered in petitioner's right arm). A claim may lose reasonable basis as it progresses if further evidence is unsupportive of petitioner's claim. *See R.K. v. Sec'y of Health & Hum. Servs.*, 760 F. App'x 1010, 1012 (Fed. Cir. 2019) (citing *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1376–77 (Fed. Cir. 1994)).

Though a special master has broad discretion, a special master must keep in mind the Vaccine Act's remedial objective of maintaining petitioners' access to willing and qualified legal assistance, and a special master may not abuse their discretion in denying reasonable basis and fees. *See James-Cornelius*, 984 F.3d at 1381.

### B. The Parties' Arguments

#### 1. Petitioner's Argument

Petitioner argued that she had a reasonable basis for her claim and is therefore entitled to discretionary attorneys' fees and costs. Reply at 1. Petitioner further argued that in order to establish reasonable basis, one only needs to demonstrate that the claim was feasible based on the totality of the circumstances. *Id.* at 8. Petitioner argued that she has met the severity requirement and established reasonable basis.

First, petitioner argued that she started exhibiting symptoms of ADEM less than a month after receiving the meningitis and Hepatitis B vaccinations and that this shows a proximate temporal relationship between the vaccination and the injury. Reply at 8. Further, her treating physicians diagnosed her with ADEM and believed that the vaccinations were the cause. *Id.* at 8-9.

Second, petitioner argued that the objective evidence shows that the ADEM symptoms lasted longer than six months. Reply at 9. She submitted that, despite her normal MRI, she continued to suffer from debilitating headaches unlike anything she had experienced prior to her ADEM diagnosis. *Id.* These headaches were so severe that she was given two new medications to help treat the severity and frequency. *Id.* at 10. She added that her pre-vaccination medical records showed that she was not on medication for her occasional headaches. *Id.* She argued that she continued to suffer from intense and frequent headaches for well over six months as documented in her medical records. *Id.* at 10-12. Further, respondent acknowledged in his Rule 4(c) Report that petitioner's migraines persisted after her ADEM diagnosis and that she continued to experience symptoms common with migraines such as dizziness and blurred vision. *Id.* at 11.

In support of the six months severity requirement, petitioner filed a statement from her primary care physician, Dr. Grund. Reply at 12. Dr. Grund stated that her ADEM symptoms were believed to be caused by the vaccinations and lasted longer than six months as she was still symptomatic during her last visit with him. *Id.*, citing Pet. Ex. 7. Petitioner stated that the Court

8

questioned the basis of Dr. Grund's opinion and asked petitioner to file additional evidence demonstrating she experienced sequelae in excess of six months. Reply at 12. Petitioner then filed six additional witness affidavits, which petitioner argued are consistent and detail her issues with ADEM symptoms extending beyond six months. *Id.* Despite having reasonable basis for her claim upon filing her petition and throughout the pendency of this matter, petitioner was forced to dismiss her claim after she could not produce the additional evidence ordered by the undersigned, rendering her claim no longer feasible. *Id.*

Under the totality of the circumstances, petitioner argues that sufficient evidence existed, demonstrating a reasonable basis for bringing her claim. Reply at 12-13. Additionally, petitioner argued that the feasibility requirement based on objective evidence is met because the medical records referenced causation and clearly documented an exacerbation of her migraines. *Id*. at 13.

## 2. Respondent's Argument

Respondent argued for the denial of petitioner's motion for fees and costs due to a lack of reasonable basis.[3] Response at 1. Respondent submitted that Section 15(e) of the Vaccine Act permits a special master to make a discretionary award of reasonable attorneys' fees and costs to an unsuccessful petitioner, but such an award is only appropriate if "the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." *Id.* at 3-4, *citing* § 15(e)(1).

Respondent pointed out that he raised the six-months requirement in his Rule 4(c) Report, showing that petitioner's ADEM had resolved by August 5, 2016, within three months of the onset of ADEM symptoms. Response at 2. The December 2016 MRIs were normal. *Id*. at 6; *see also* Pet. Ex. 4 at 9-10. Furthermore, petitioner's medical records failed to link petitioner's claim of exacerbation of migraines to the vaccines. Response at 6. Petitioner's neurologist suspected her headaches were worsened by poor sleep and anxiety, and she had both a personal and family history of migraines. *Id*.; *see also* Pet. Ex. 4 at 48-52.

Petitioner was provided several opportunities to submit additional evidence in support of the six months requirement. Response at 7. Although petitioner submitted witness affidavits and a statement from Dr. Grund, the statements were inconsistent with the contemporaneous medical records. *Id*. at 2, 7.

Respondent added that petitioner was ordered to submit further evidence documenting her injury lasting longer than six months. In response, she submitted a personal statement, indicating her belief that she had produced sufficient evidence to support her claim and did not intend to submit the evidence requested. Petitioner was then ordered to submit additional evidence or file a motion to dismiss her case. Response at 2. Petitioner voluntarily dismissed her claim on January 28, 2021. *Id*. at 3.

Respondent argued that a reasonable basis analysis requires an "objective inquiry" that relates to the "factual basis" or "merits of petitioner's claim." Response at 5, citing *Simmons*, 875

---

[3] As previously noted herein, respondent raised no objection as to good faith. Thus, I find that petitioner brought her claim in good faith.

9

F.3d at 633-36. Further, petitioner must offer more than an unsupported assertion that the vaccines she received caused an injury. Response at 6. Here, petitioner failed to provide objective evidence that her ADEM lasted longer than six months and failed to meet the causation requirements. *Id*. at 6-7.

Respondent concluded that petitioner did not have reasonable basis at the time the petition was filed and failed to provide objective evidence to resolve the deficiencies in this case, such that reasonable basis never materialized. Therefore, petitioner's motion for attorneys' fees and costs should be denied. Response at 7-8.

### III. Analysis of Reasonable Basis

Petitioner satisfied the *Cottingham* elements of reasonable basis when she filed facially trustworthy medical records demonstrating that she (1) received a vaccine listed on the Vaccine Injury Table; (2) received the vaccination in the United States; (3) sustained an injury allegedly caused by the vaccine; (4) experienced the residual effects of the injury for more than six months; and (5) has not previously collected an award or settlement of a civil action for damages for the same injury. 971 F.3d at 1345-46.

To establish a reasonable basis for attorneys' fees, the burden is lower than the preponderant evidence standard required to prove entitlement to compensation. *Cottingham ex. rel. K.C. v. Sec'y of Health & Human Servs.*, 971 F.3d 1337, 1345-46 (Fed. Cir. 2020). Petitioner must provide more than a mere scintilla of evidence, defined as "evidence beyond speculation that provides a sufficient basis for a reasonable inference of causation*." Cottingham v. Sec'y of Health & Human Servs.*, 154 Fed. Cl. 790, 795 (2021) (*quoting Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 765 (4th Cir. 2021)).

Respondent's objection to reasonable basis involves two issues: petitioner's failure to meet the severity requirement and petitioner's failure to prove causation. *See generally* Response. Regarding the failure to meet the severity requirement, while the evidence filed was insufficient to prove by preponderant evidence that her symptoms lasted the requisite six months following vaccination, the records were sufficient to satisfy the lower burden required for reasonable basis for filing the petition.

Petitioner received the subject Hep B and meningococcal vaccines on May 13, 2016. Pet. Ex. 2 at 11, 14. She was hospitalized roughly two weeks later and had an abnormal brain MRI indicative of ADEM and a lumbar puncture consistent with meningitis. Pet. Ex. 3 at 69-73, 78-81, 115-16, 156-57.

Approximately three months later, on August 5, 2016, petitioner's ADEM had resolved. Pet. Ex. 1 at 37. Petitioner complained of headaches 2-3 times weekly, which the neurologist documented as sounding like migraines. *Id*. at 37-38, 41. She was prescribed migraine medication at this visit. *Id*. at 37-44; Pet. Ex. 3 at 571-72.

Petitioner consulted with and retained counsel in the fall of 2016. Motion for Fees at 6.

10

In June 2017—close to year after her last visit—petitioner followed up with her neurologist for continued migraines with photophobia, phonophobia, and blurry vision. The neurologist attributed her worsening headaches to poor sleep and anxiety. Pet. Ex. 4 at 48-52. At her next visit on November 17, 2017, she reported migraines roughly three times a week and a bad headache once every two weeks. *Id*. at 76. The neurologist documented a full recovery from ADEM. She was instructed to continue taking her migraine medication. *Id*. at 81.

In February 2018, petitioner presented to the emergency room, reporting migraines consistent with the ones she had since her ADEM diagnosis in 2016. Pet. Ex. 6 at 55-56. She further reported to a rheumatologist on August 17, 2018 that she suffered from chronic fatigue in part due to her ADEM. *Id*. at 10.

Petitioner alleged that her migraines post-ADEM were caused by the vaccine(s) and were different from the headaches she had prior to her vaccination. *See generally* Reply; ECF No. 18. She continued to report frequent migraines at follow up appointments after her hospitalization for ADEM. Pet. Ex. 1 at 37-38, 41; Pet. Ex. 3 at 571-72; Pet. Ex. 4 at 48-52, 76, 81; Pet. Ex. 6 at 55-56. She was prescribed migraine medication approximately three months after vaccination, which she continued to take through at least February 2018. Pet. Ex. 1 at 37-44; Pet. Ex. 3 at 571-72; Pet. Ex. 6 at 55-56.

Respondent maintained that medical records indicated that petitioner's ADEM resolved within three months of vaccination. Pet. Ex. 1 at 37-38, 41. In order to prove entitlement, petitioner would have been required to show by preponderant evidence that her migraines were causally related to the vaccine(s) she received. She failed to do so. However, the fact that she did not do so does not necessarily defeat reasonable basis.

Reasonable basis requires little more than a mere scintilla of objective evidence to support petitioner's claim; it does not require proof of causation or entitlement. Petitioner's medical records document petitioner's complaints of more frequent and severe headaches and migraines following her vaccinations, thus providing more than a mere scintilla of evidence that she continued to complain of headaches after the resolution of her ADEM. Whether she would have been able to prove that her headaches or migraines were causally related to her ADEM is not at issue for purposes of establishing reasonable basis in the filing of the petition.

When the six months severity requirement was challenged, petitioner affirmed requiring special accommodations both at school and at work. Pet. Ex. 12. She then provided several affidavits and a statement from her PCP in support of those claims. Pet. Ex. 7. Dr. Grund wrote that petitioner "eventually had substantial improvement" but her recovery period took close to a year. *Id*. at 2. It is unclear on what Dr. Grund based his statement that her recovery took close to a year to resolve, as he made no reference to any medical record or condition that had not resolved within six months but ultimately resolved within a year after her vaccinations. The affidavits from petitioner and her friends, co-workers, and classmates detail how her symptoms persisted for over six months after vaccination. Pet. Ex. 8-14. However, the content of those affidavits was inconsistent with petitioner's medical records and the findings on medical examinations, calling into question the credibility of the affiants. Response at 7; *see also* ECF No. 43. When petitioner was ordered to produce her employment and nursing school records to support her affirmations of

accommodations at school and reduced work hours, she refused to do so and chose instead to voluntarily dismiss her claim. *See* Pet. Ex. 15.

The Federal Circuit explained in *James-Cornelius* that affidavits may provide objective evidence supporting a claim in the Vaccine Program, particularly when they contain statements as to facts within the affiant's personal knowledge, such as "the receipt of a vaccine and the timing and severity of symptoms." 984 F.3d at 1380-81. However, when the affidavits contain statements that are contradicted by the objective evidence, they lose value and are given little weight.

Regarding respondent's second argument involving causation, it is well established that the reasonable basis standard is lower than the preponderance of evidence standard used to determine causation. *Cottingham*, 971 F.3d at 1345-46; *James-Cornelius*, 984 F.3d at 1379. Whether petitioner would have been able to prove causation is not at issue here. Petitioner satisfied the lower burden for reasonable basis even if she was unable to prove causation.

I find that petitioner provided sufficient evidence to support a feasible claim of causation for purposes of satisfying the reasonable basis requirements. The contemporaneous medical records show that several of petitioner's treating physicians documented the possibility that the vaccines she received may have played a role in her ADEM. Pet. Ex. 1 at 15; Pet. Ex. 3 at 112, 137; Pet. Ex. 4 at 81; Pet. Ex. 6 at 55-56. Her neurologist recommended that she refrain from receiving the Tdap vaccine for at least a year following her hospitalization for ADEM. It is unknown whether this recommendation was a result of the neurologist's belief that the vaccines played a role in the ADEM or was simply a precautionary measure because of the ADEM itself. Pet. Ex. 4 at 31. Although unsupported by the medical records, Dr. Grund opined that her migraines were exacerbated by the meningitis she suffered from following vaccination. Pet. Ex. 7 at 2. Dr. Grund's conclusory opinion and the treating providers' speculations are clearly insufficient to satisfy the *Althen* prongs. However, they do provide a mere scintilla of objective evidence to support a reasonable inference of causation to satisfy reasonable basis in this instance. Thus, I find that petitioner has met the burden required for a finding of reasonable basis and for awarding fees.

Finally, special masters have underscored the importance of awarding attorneys' fees to encourage the participation of competent legal counsel in the Vaccine Program. As the Special Master stated in *Iannuzzi v. Sec'y of Health & Human Servs*.:

> Simply put, the ultimate purpose of Vaccine Act fees and costs awards is *not* to benefit the *attorneys* involved, but to *ensure that Vaccine Act petitioners will have adequate access to competent counsel*. . . Accordingly, when attorneys spend a reasonable amount of time and costs in representing Vaccine Act petitioners, such attorneys must be fairly compensated for their expenditures, in order to encourage attorneys to participate in future Vaccine Act cases.

No. 02-780V, 2007 WL 1032379, at *11 (Fed. Cl. Spec. Mstr. Mar. 20, 2007), *rev'd in part*, 78 Fed. Cl. 1 (2007) (emphasis in original); *see also James-Cornelius*, 984 F.3d at 1381 (in exercising her discretion to award attorneys' fees, the special master must keep in mind the remedial objective of maintaining petitioners' access to willing and qualified legal assistance).

For the aforementioned reasons, the undersigned finds that there was a reasonable basis for the filing of the petition and during the pendency of the matter until it was dismissed.

### IV. Reasonable Attorneys' Fees

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs*., 515 F.3d 1343, 1349 (Fed. Cir. 2008). Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings. *Id.* at 1348.

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. *See Savin v. Sec'y of Health & Human Servs*., 85 Fed. Cl. 313, 316-18 (2008). Counsel should not include in their fee requests hours, including those by paralegals, that are "excessive, redundant, or otherwise unnecessary." *Saxton v. Sec'y of Health & Human Servs*., 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Id.* at 1522. Furthermore, the special master may reduce a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioner notice and opportunity to respond. See *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009). A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen*, 102 Fed. Cl. at 729.

#### 1. Reasonable Hourly Rates

A reasonable hourly rate is the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). Rather than being based on the prevailing rate in the forum where petitioner's attorney practices, the rate is based on the forum rate for the District of Columbia. *Rodriguez v. Sec'y of Health & Human Servs*., 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). A narrow exception to this forum rule applies "where the bulk of the attorney's work is done outside the forum jurisdiction, and where there is a very significant difference in the compensation rate between the place where the work was done and the forum." *Id.* This exception is known as the *Davis County* exception, and it provides for attorneys' fees to be awarded at local hourly rates. *Hall v. Sec'y of Health & Human Servs*., 640 F.3d 1351, 1353 (2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

*McCulloch* provides a multifactor framework for deciding the reasonable forum rate based on the attorney's experience, overall quality of work performed, and prevailing rates in the program and forum. *McCulloch v. Sec'y of Health & Human Servs*., No. 09-293V, 2015 WL

5634323, at *17 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[4]

Attorney Nancy Meyers submitted hourly rates for herself in the amount of $350 for 2016-2017, $375 for 2018, $390 for 2019, $400 for 2020, and $430 for 2021. Motion for Fees at 4; Supplemental Motion at 4-5. She submitted hourly rates for her paralegals, mainly Lisa Hobbs, in the amount of $145 for 2016-2019, $150 for 2020, and $155 for 2021. *Id*. These rates are consistent with what Attorney Meyers and her paralegals have been awarded in other vaccines cases. *Parker v. Sec'y of Health & Human Servs.*, No. 18-602V, 2021 WL 6276197, at *3 (Fed. Cl. Spec. Mstr. Dec. 21, 2021) (awarding the requested rates in full); *see also Deese v. Sec'y of Health & Human Servs.*, No. 19-1127V, 2021 WL 4946935, at *2 (Fed. Cl. Spec. Mstr. Sept. 24, 2021). Thus, I find the requested rates to be reasonable.

2.  **Hours Reasonably Expended**

Attorneys' fees may be awarded for the number of hours reasonably expended during litigation. *Avera*, 515 F.3d at 1348. The special master should use her prior experience and judgement to exclude from the fee calculation hours that are "excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Unreasonably duplicative or excessive billing can include attorneys billing at attorney rates for clerical work, "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intraoffice communications, attorneys billing excessive hours, attorneys entering erroneous billing entries, [and] attorneys billing excessively for interoffice communications." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 702-703 (2016). Secretarial and clerical tasks such as reviewing invoices and scheduling meetings are not compensable under the Vaccine Program. *See McCulloch*, 2015 WL 5634323, at *26; *Raymo,* 129 Fed. Cl. at 702. Billing for learning about the basic aspects of the Vaccine Program is also not compensable. *Matthews v. Sec'y of Health & Human Servs.*, No 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016).

While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal. *O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Further, attorneys may be compensated for hours traveled at one-half of the normal hourly attorney rate. *See Scott v. Sec'y of Health & Human Servs.*, No. 08-756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases); *see also Knox v. Sec'y of Health & Human Servs.*, No. 90–33V, 1991 WL 33242, at *7 (Fed. Cl. Spec. Mstr. Feb. 22, 1991) (finding that "50% of the expert's [travel] time should be compensated"). Ultimately, the special master maintains discretion in awarding fees for reasonable hours expended and "is permitted to reduce attorneys' hours found to be excessive by a percentage." *Raymo,* 129 Fed. Cl. at 702; *see also Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the Special Master's reduction of

---

[4] The 2015-2023 Fee Schedules can be accessed at http://www.cofc.uscourts.gov/node/2914. The hourly rates contained within the schedules are updated from the decision in *McCulloch v. Sec'y of Health & Human Sers.*, No. 09-923V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (same).

Attorney Meyers and her paralegals billed a total of 163.4 hours on this matter. Motion for Fees at 5-20, 58; Supplemental Motion at 4. Upon review of the hours billed by Attorney Meyers and her paralegals, I find that their time was appropriately documented with specificity and their billing records did not contain charges for impermissible tasks, such as administrative duties or time spent learning about the Program. Further, I find it reasonable that a legal team would expend a combined 163.4 hours on a case over a span of nearly four and a half years, from the time that petitioner's attorney began working on this matter until it was dismissed. Therefore, no reduction is warranted.

### 3. Reasonable Costs

Petitioner also requested $1,285.06 for miscellaneous expenses, such as medical records, court filings, shipping expenses, and electronic legal research. Motion for Fees at 4, 21-47; Supplemental Motion at 4. In her Supplemental Motion, petitioner requested $58.04 for electronic legal research from March 1 through March 31, 2021. Supplemental Motion at 4. However, no supporting documentation was filed and there was no indication as to what was purchased. Thus, this request will not be awarded, resulting in a **reduction of $58.04**. Otherwise, these costs are reasonable and supported by the receipts filed, and I will compensate them in full.

### V. Conclusion

Based on the foregoing, petitioner's Motion for Attorneys' Fees is **GRANTED in part.** The undersigned finds that it is reasonable to compensate petitioner and her counsel for a **total attorneys' fees and costs of $36,747.02,** representing **$35,520.00** in attorneys' and paralegals' fees and **$1,227.02** in costs.

Accordingly, the undersigned awards:

> **A lump sum payment of $36,747.02 representing reimbursement for petitioner's attorneys' fees and costs in the form of a check payable jointly to petitioner and her counsel of record, Nancy Meyers with Turning Point Litigation.**

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[5]

**IT IS SO ORDERED.**

**s/ Mindy Michaels Roth**
Mindy Michaels Roth
Special Master

---

[5] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.